IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNICEP PACKAGING, INC., an Idaho corporation,<br><br>         Plaintiff,<br><br>  vs.<br><br>BRANSON ULTRASONICS CORPORATION d.b.a. AMERICAN TECHNOLOGY, INC., a Connecticut corporation,<br><br>         Defendant. | CASE NO. 06-CV-00072-N-EJL<br><br>MEMORANDUM ORDER |

Pending before the Court in the above-entitled matter is Defendant Branson Ultrasonics Corp.'s ("Branson" also known as "AmTech") motion for summary judgment (Docket No. 24) and Plaintiff Unicep Packaging, Inc.'s ("Unicep") motion for partial summary judgment (Docket No. 31). Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument.

Factual Background

Plaintiff Unicep contacted Defendant AmTech regarding AmTech's ultrasonic sealer machines in early 2002. Prior to using ultrasonic sealing, Unicep used heat to seal its containers although the seal was not always successful if there was any contamination from

MEMORANDUM ORDER- 1

product in the heat sealed area.  Unicep worked with AmTech to develop a high speed tube

sealer for certain tube materials, including Medium Density Polyethylene ("MDPE").

AmTech worked with Plaintiff to meet the specifications necessary for sealing the vials.

AmTech provided a quotation for the ST-40HS machine (1001-1969B) on August 5, 2002.

The quotation did not contain the warranty information and standard terms and conditions

used in later quotations. Unicep responded to the quotation with its Purchase Order No.

0101273 dated September 9, 2002.  Attached to the purchase order for the ultrasonic tube

sealer were 10 pages of specifications for the equipment.  The specifications stated that prior

to shipment, the equipment must pass field test runs at AmTech and if successful, then the

equipment must pass acceptance tests at Unicep's plant before final acceptance would occur.

Unicep's specifications set forth seal quality requirements for Purchase Order No.

0101273 :

> 5.0 FUNCTIONAL REQUIREMENTS
>> 5.1 Seal Quality:
>>
>>> 5.1.1 Burst strength of the seal will be higher than the vial bulb, in other words the seal will not burst before the bulb bursts in a standard test (to be performed at Vendor's facility)
>>>
>>> 5.1.2  Cosmetic appearances must meet or exceed current requirements for shape with less than .005" flash.  See attached drawings for target seal dimensions.

In late 2002 or early 2003, AmTech informed Unicep that the ST-40HS model would not

meet Plaintiff's needs and recommended the Advanced UltraWeld 20 sealer ultrasonic

welder.  An new quotation (with the same quotation number , 0203-2712B) was issued for an

Advanced UltraWeld 20 sealer was given by AmTech to Unicep on or about January 27,

2003.  This quotation was 11 pages in length and included standard terms and conditions

MEMORANDUM ORDER- 2

including language excluding all implied warranties between the parties; providing an express warranty that Advanced Ultraweld 20 machine would not be defective in terms of materials or workmanship, and excluding AmTech's liability for all incidental and consequential damages. A choice of law provision was also included indicating Connecticut law controlled the contract. In response to the new quotation, Unicep cancelled the first purchase order for the ST-40HS (101273) and issued an new purchase order (0101800) for the purchase of the recommended sealer on February 26, 2003 which included 12 pages of Unicep's written product specifications including:

> 5.0 FUNCTIONAL REQUIREMENTS:
>
> > 5.1 Seal Quality:
> >
> > > 5.1.1 Burst strength of the seal will be higher than the vial bulb, in other words the seal will not burst before the bulb bursts in a standard test (to be performed at Vendor's facility. Six Sigma requirements are standard for seal quality.
> > >
> > > 5.1.2 Unicep Packaging will use a vacuum test to verify seal quality, both at Vendor's facility and during acceptance testing at Unicep Packaging, Inc.
> > >
> > > 5.1.3 Cosmetic appearances must meet or exceed current requirements for shape, with less than .005" flash. See attached drawings for target seal dimensions. Need to hold Six Sigma requirements for cosmetic specifications.

The written specifications also provided the Acceptance Procedure in Section 10, which included testing at Vendor's facility as well as successfully meeting the functional requirements at Unicep's plant. Unicep's written specifications did not conflict with the terms of the quotation that excluded implied warranties, limited damages, and selected

MEMORANDUM ORDER- 3

Connecticut as the choice of law to apply to the contract.  It appears undisputed that the first

sealer purchased was used for polypropylene vials and it worked satisfactorily.

In January of 2003, it was determined that AmTech could not get a proper seal on MDPE

vials without preheating the vial and that a precrimp assembly would be required to meet the

sealing requirements for MDPE vials.  Plaintiff provided one of their  preheating machines to

AmTech to use to run more tests.  AmTech determined the amount of preheating required for

acceptable sealing.   With the use of Plaintiff's preheater, the sealer met the written

Functional Requirements set forth in Unicep's specifications relating to burst strength,

vacuum testing and cosmetic appearance.  In fact, the burst strength results were better than

the heat seals that had previously been used by Unicep.

On July 11, 2003, AmTech provided a quotation for the purchase of one Advanced

Ultraweld sealer.  On July 17, 2003, a revised quotation using the same quotation number,

0203-2712A was provided changing the quantity to four (4) Advanced Ultraweld 20

machines with a quantity discount on the price for a total of $126,000.00.  The quotation on

July 11, 2003 had the standard AmTech terms and conditions.  The quotation on July 17,

2003 appears to only have the first two pages changing the quantity and price.

In response to the revised quotation, Unicep issued Purchase Order No. 0102260 to

AmTech for the four (4) sealers.  It is unclear whether the purchase order included the

written specifications that had been provided with the purchase order on the first sealer.

There is no evidence of any change in the Functional Requirements of Unicep or the standard

terms and conditions set forth in the quotation of July 11, 2003.  The Purchase Order

indicates that machine #1 will run for 30 days and then Unicep will accept delivery of

machines #2 and #3 based on #1 ability to run MDPE.  Machine #4 will ship on December

2003.  Unicep agreed to accept delivery of the first machine after it passed the production tests the first 30 days of use.  It is undisputed that Plaintiff used the sealers in the production line with its preheaters.  Plaintiff was aware of the fact that absent the use of the preheater, the AmTech sealer would not meet its needs.  After sealing, the vials were vacuum tested for faulty seals.  Less than 1% failed the vacuum burst testing.  This failure rate was within the written specifications of Plaintiff.

On February 2004, after Unicep had been using the five sealers it purchased earlier, it ordered another Advanced Ultraweld 20 from AmTech for $37,484.00 in Purchase Order No. 0102984 referencing AmTech's Quotation No. 0203-2712B dated January 27, 2004.  The Quotation No. 203-2712B was originally dated January 13, 2004 and included AmTech's standard terms and conditions.  The Purchase Order states "RETURN FOR FULL REFUND IF WE CANNOT SEAL OUR PARTS."   There is no reference to the written specifications of Unicep on the purchase order.  All AmTech sealers were inspected and accepted by the Unicep agents as meeting the required specifications.

On or about January 2005, Unicep was informed by its clients that products that had been properly sealed at the plant were spontaneously failing for no apparent reason approximately six months after sealing.  It is undisputed that customers of Plaintiff returned over one million failed vials.  On March 11, 2005, Unicep wrote to AmTech regarding samples of failed seals and requested "the methods used to test the seals to ensure they would stay intact over a period of time and the varying temperature conditions."

It is undisputed that there was no long term seal integrity requirement in the written specifications provided by Unicep.  Neither AmTech nor Unicep performed accelerated testing that could have detected the lack of long term vial integrity.

In a letter dated July 1, 2005 from Unicep's CFO, Ted Flint, to Joe Stacey, Sales Representative for AmTech, Unicep provided written notification of revocation of acceptance of the six AmTech Advanced Ultraweld 20 Ultrasonic Sealers sold to Unicep and described in Purchase Orders Nos. 0101800, 0102260 and 0102984 and AmTech's Invoice Nos. 16268, P000476 and P0002125.  The revocation was based on the fact "the AmTech machines delivered to UPI [Unicep] do not form a seal with acceptable seal integrity." Unicep alleges the failure to for a seal that has true seal integrity is a non-conformity that substantially impairs the value of the sealers to Unicep.

AmTech argues the Advanced Ultraweld 20 machines met the written specifications provided by Unicep for seal quality (cosmetic and functional) for every vial size and that is why Unicep had agreed to final acceptance of all six machines.  AmTech maintains that long-term seal integrity was not part of the written specification so failure to meet this specification is the Plaintiff's burden, not the manufacturers.

One expert has provided a report and deposition testimony that it is not the seal that fails, but the area right below the seal that was put under stress by the preheating and sealing steps. Defendant's expert opines  the residual stress or "creep failure" of the material cannot be caused by ultrasonic welding only by the preheating.  Plaintiff now argues the required use of the preheater in the production process in order to get the necessary seal prevents AmTech from satisfying the written specifications which do not provide for a preheater step in production.

Plaintiff filed its Complaint on January 24, 2006 in state court alleging the sealers purchased from AmTech were nonconforming goods and that Unicep is entitled to recover the purchase price of the sealers as well as incidental and consequential damages.  The

matter was removed to federal court by the Defendant.  AmTech claims the sealers met the written specifications of Plaintiff and were conforming goods.  Defendant Branson (AmTech) has moved for summary judgment and Unicep filed a cross motion for partial summary judgment.

Standard of Review

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure.  Rule 56 provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

The Supreme Court has made it clear that under Rule 56 summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to the non-moving party's case and upon which the non-moving party will bear the burden of proof at trial. See, Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986).  If the non-moving party fails to make such a showing on any essential element, "there can be no `genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.[1]

---

[1] See also, Rule 56(e) which provides, in part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine."  An issue is "material" if it affects the outcome of the litigation.  An issue, before it may be considered "genuine," must be established by "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial."  <u>Hahn v. Sargent</u>, 523 F.2d 461, 464 (1st Cir. 1975) (<u>quoting</u> <u>First Nat'l Bank v. Cities Serv. Co. Inc.</u>, 391 U.S. 253, 289 (1968)).  The Ninth Circuit cases are in accord.  <u>See, e.g.</u>, <u>British Motor Car Distrib. v. San Francisco Automotive Indus. Welfare Fund</u>, 882 F.2d 371 (9th Cir. 1989).

According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

<u>Id.</u> at 374 (citation omitted).

Of course, when applying the above standard, the court must view all of the evidence in a light most favorable to the non-moving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986); <u>Hughes v. United States</u>, 953 F.2d 531, 541 (9th Cir. 1992).

Analysis

Unicep's complaint alleges a claim for revocation of acceptance of goods under the Uniform Commercial Code ("UCC") § 2-608:

> The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it (a) on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or (b) without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

MEMORANDUM ORDER- 8

To revoke acceptance, the buyer must first show that the goods did not conform to the contract.  <u>H.B. Fuller Co. v. Kinetic Systems, Inc.</u>, 932 F.2d 681, 687 (7th Cir. 1991).   A good is conforming when it is "in accordance with the obligations under the contract."  UCC § 2-206, <u>Atlan Industries v. O.E.M.</u>, 555 F. Supp 184, 188 (D. Okla. 1983).

Clearly, the cause of the lack of long-term integrity of the sealed vials is an issue in this case.  However, the first question for the Court to answer is was this alleged non-conformity an obligation under the terms of the contracts between the parties.   If not a term of the contract, the buyer cannot revoke acceptance for this alleged non-conformity.

1.  Contracts.

Article 2 of the UCC applies to the sale of "goods."  It is undisputed that the Advanced Ultraweld 20 machines fit the definition of "goods" under the UCC.  Plaintiff purchased six sealers under three different purchase orders.  The terms of each of the three contracts differ slightly as the companies involved used different forms on each transaction.  Each of the three purchases constituted a separate contract.

Plaintiff claims genuine issues of material fact exist regarding the terms of the contracts at issue in this case and the summary judgment filed by Defendant must be denied. Defendant claims the terms of the contract are clear and entitle the Defendant to summary judgment as a matter of law.  The Court finds this case presents the classic "battle of the forms" legal argument for the Court to address and the Court will analyze each contract separately.

A. <u>First Contract for Sealer No. 1.</u>

Plaintiff claims the first sealer contract does not contain any limitations on damages and warranties or a choice of Connecticut law as the original contract on the ST-40HS machine

MEMORANDUM ORDER- 9

controls and that original quotation did not contain AmTech's standard terms and conditions. While it is true the parties ultimately agreed to the purchase of a different machine, Unicep claims the original contract controls.  AmTech argues the new quotation for the Advanced Ultraweld 20 which contains the standard terms and conditions controls along with the new purchase order issued by Unicep.  The Court agrees with AmTech.

Unicep expressly cancelled its purchase order on the SH-40HS machine when it issued the new purchase order with a different number that states: "CANCELED PO #101273 - THIS PO TO REPLACE."  It is undisputed that Unicep received the new quotation for the Advanced Ultraweld 20 with the standard terms and conditions, technical drawings and warranty information before it issued its new purchase order for the Advanced Ultraweld 20. Accordingly, the terms of the contract on the first sealer are controlled by the terms and conditions in the quotation for the Advanced Ultraweld 20 and the written specifications referenced on the purchase order and not the quotation for the ST-40HS that was never purchased.

Unicep concedes in its briefing that the first welder is not at issue as it worked satisfactorily on polypropylene vials.   Accordingly, Defendant's motion for summary judgment should be granted on the first contract.


### B.  Second Contract for Sealers No. 2 - 5

On the contract for the purchase of four sealers, Unicep argues the Purchase Order was Unicep's acceptance of AmTech's revised contract terms in the revised quotation that did not include the standard terms and conditions and AmTech cannot change the terms of the contract and add additional terms unilaterally after the contract is formed.  Based on this

MEMORANDUM ORDER- 10

argument, Plaintiff argues there is no limitation on damages or warranties and the  choice of law for the contract should be Idaho.  AmTech argues the revised quotation only changed the quantity of sealers being ordered and reduced the price and that all other terms remained as presented in the quotation dated July 11, 2003 which included AmTech's standard terms and conditions.  The Court again agrees with AmTech.

The terms of the contract agreed to are not viewed in isolation.  On July 11, 2003, AmTech provided a quotation with its standard terms and conditions and technical drawings and warranties for the purchase of one Advanced Ultrawelder 20.  Unicep then requested the quotation be changed to 4 sealers and requested a quantity discount in price.  AmTech provided the revised quotation with the same quotation number with only the two pages affected by the requested change being included.  Unicep issued its purchase order for the four sealers and did not add additional terms or conditions.  Thus, AmTech's general terms and conditions control.  Suzy Phillips Originals, Inc. V. Coville, Inc., 939 F. Supp 1012, 1017-18 (E.D.N.Y. 1996).  All the terms of the prior quotation remained except for those expressly modified (quantity and price).  Therefore, the standard terms and condition set forth in the July11, 2003 quotation control except for quantity of sealers and price that were modified in the July 13, 2003 quotation.

Both parties in this case are sophisticated businesses.  The extensive written specifications submitted by Unicep do not include the requirement of accelerated or aging testing to determine the long term integrity of the seals.  Unicep's agents agree such a specification could have been included, but it was not.  It is undisputed the functional requirements in the buyer's written specifications were satisfied.

MEMORANDUM ORDER- 11

Plaintiffs argue that the latent defect of residual stress was not known when Unicep accepted the machines.  Since the preheating was required by AmTech for the seal to be effective, Unicep agreed to the preheating without knowing it would cause the residual stress that would lead to cracking.  AmTech responds that Unicep never asked AmTech to ensure that the vials sealed  using the welders would meet some aging or stability requirement so it unfair to impose a new contract term.

The Court finds as a matter of law that under the terms of the contract, the sealer machine conformed to the buyer's written specification since there was no requirement on the long-term integrity of the ultrasonic seal.   Any implied warranties regarding the long-term integrity of seal were excluded under the express terms of the contract.  Unicep also agreed under the terms of the contract to the following language:

> SELLER SHALL NOT BE LIABLE FOR DAMAGES CAUSED BY DELAY IN PERFORMANCE AND IN NO EVENT, REGARDLESS OF THE FORM OF THE CLAIM OR CAUSE OF ACTION (WHETHER BASED IN CONTRACT, INFRINGEMENT, NEGLIGENCE, STRICT LIABILITY, OTHER TORT OR OTHERWISE), SHALL SELLER'S LIABILITY TO BUYER AND/OR ITS CUSTOMERS EXCEED THE PRICE TO BE PAID BY BUYER FOR THE SPECIFIC PRODUCTS PROVIDED BY SELLER GIVING RISE TO THE CLAIM OR CAUSE SELLER'S LIABILITY TO BURY AND/OR ITS CUSTOMERS EXTEND TO INCLUDE INCIDENTAL, CONSEQUENTIAL OR PUNITIVE DAMAGES.

Because the contract excluded damages for incidental or consequential damages, Unicep may not recover for its consequential damages related to the failed vials and such clauses that limit damages are enforceable under Connecticut law.   See McKernan v. United Technologies Corp., Sikorsky Aircraft Div., 717 F. Supp 60 (D. Conn, 1989).          Stated another way, the long term integrity of the seals was not a term of the contract which was breached by AmTech.  The goods conformed to the contract terms since Unicep's written specifications were met and the buyer cannot revoke its acceptance of the goods.  The

limiting language in the standard terms and conditions of AmTech's quotation prevent Unicep from recovering under an implied warranty theory or for consequential damages. The Defendant's motion for summary judgment on the second contract should be granted.

### C.  Third Contract for Sealer No. 6

Unicep concedes that the AmTech Quotation No. 0203-2712B for this purchase of goods contained AmTech's standard terms and conditions including a limitation on damages, warranties and a choice of law and was an offer by AmTech to Unicep.  However, Unicep issued a purchase order which stated that it was entitled to a full refund if Unicep could not seal its parts.  Unicep also concedes it is not entitled to incidental or consequential damages or breach of warranty claims under this contract pursuant to Connecticut law, but argues that AmTEch expressly agreed to the "full refund" language in the purchase order if it did not properly seal the vials when it delivered the sixth sealer to Unicep.  AmTech argues the refund condition does not apply as the sealer met the functional requirements of Unicep.

The Court finds that the new contract term of a "full refund if we [Unicep] cannot seal our parts" was accepted by AmTech as a part of the contract when the purchase order was accepted  by AmTech.  There is a genuine issue of material fact as to whether the sealer at issue did or did not properly seal the parts.  While it is true that this contract include the standard terms and conditions which excluded implied warranties, there is conflicting expert testimony regarding whether the sixth machine met the requirement in the purchase order or if the purchase order refund only applies if the functional requirements set forth by Unicep were not satisfied, or whether the seal failed or the vial failed.  Based on these factual

MEMORANDUM ORDER- 13

disputes, the Court cannot determine whether or not the goods conformed to the terms of contract and summary judgment on this claim must be denied.


2.  Revocation by Plaintiff.

Assuming for purposes of this motion that Plaintiff is entitled to revoke the purchase in the third contract for  sealer number six, the Defendant argues the revocation was untimely. Unicep began using the new machines in December 2003 and purchased its sixth machine in February 2004.  In January 2005, Unicep was informed the seals were failing.  At least by March, 2005, Unicep had notified AmTech of the spontaneous failure of certain vials.  In July of 2005, Plaintiff gave AmTech written notification of its revocation of the alleged non-conforming goods.  Revocation must occur within a reasonable time and it is a question of fact whether the notice was within a reasonable time in this particular case.  The Court will reserve its ruling on this argument until the contract issue is decided on sealer number 6.


3.  Use of the Preheater

Plaintiff claims in its motion for partial summary judgment that the required use of its preheater in the production process prior to the ultrasonic sealing, by definition prevents the AmTech machines from conforming to the written specifications provided by Unicep.  The Court finds this argument to be without merit.  While it is true the requirement of preheating was not addressed in the written specifications, it also clear from the record that absent the preheating step the AmTech sealers would not work on the MDPE vials provided by Unicep for testing.  Unicep provided its preheater to AmTech to test sealing and was informed that without the preheater, the AmTech machine could not achieve the functional requirements

MEMORANDUM ORDER- 14

set forth by Unicep.   Unicep acknowledged this fact and agreed to accept the AmTech machines with the clear understanding that without the preheater, the sealers would not work.

It is well-settled law that contracts can be modified by the mutual agreement of the parties.   Such modifications do not need to be in writing.   UCC § 2-207 provides that "a definite and seasonable expression of acceptance . . . operates as an acceptance. . . ." The record is clear in this particular case that agents of Unicep accepted this change in the contract specifications by its approval of the preheating requirement and acceptance of the machines.   It is simply too late and unfair for Unicep to claim in its cross motion for partial summary judgment that the use of the preheaters was not agreed to by Unicep prior to the delivery of the machines by AmTech.   Motion for summary judgment on this ground is denied.


                                            ORDER

Being fully advised in the premises, the Court hereby orders that Defendant Branson Ultrasonics Corp.'s motion for summary judgment (Docket No. 24) is DENIED IN PART AND GRANTED IN PART consistent with this Order and Plaintiff Unicep Packaging, Inc.'s motion for partial summary judgment (Docket No. 31) is DENIED consistent with this order.


DATED:  **September 27, 2007**


Honorable Edward J. Lodge
U. S. District Judge

MEMORANDUM ORDER- 15